# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| LEARSCHMIDT INVESTMENT GROUP, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>AB-ALPINE SPE, LLC., *et al.*,<br><br>        Defendants. | Case No. 2:19-cv-04053-NKL |

## ORDER

Defendant AB-Alpine SPE, LLC ("AB-Alpine") moves to dismiss plaintiff LearSchmidt Investment Group, LLC's ("LearSchmidt") First Amended Complaint. Doc. 53. For the following reasons, AB-Alpine's motion to dismiss is denied.

## I. Background

In January 2017, LearSchmidt entered into an Asset Purchase Agreement ("APA") with IQ Payment Systems, LLC doing business as Alpine Payment Systems ("Alpine"), in which LearSchmidt purchased the revenues produced by a portfolio of merchant accounts, described more fully in Section 1.1 of the APA (the "Accounts"). *See* Doc. 38-1 (APA). Under the terms of the APA, Alpine was to transfer all of its interests in the Accounts to LearSchmidt, and LearSchmidt was to receive notice and right of first refusal to purchase the rights or interests in the Accounts from Alpine, should Alpine elect to sell or dispose of any of its rights. LearSchmidt alleges, upon information and belief, that Alpine "sold its rights and interests in the Accounts to [AB-Alpine]," without notice pursuant to its right of first refusal. Doc. 38 (First Amended Complaint), ¶ 26. LearSchmidt asserts that "the obligations and covenants of Alpine under the

[APA] are binding upon [AB-Alpine] as the successor and assign of Alpine." *Id.* at ¶ 62.

II. **Discussion**

AB-Alpine moves to dismiss LearSchmidt's claims for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2).[1] LearSchmidt carries the burden of proof and, at this stage in the case, must "make a prima facie showing that personal jurisdiction exists." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591 (8th Cir. 2011). Although "[t]he evidentiary showing required at the prima facie stage is minimal," *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (quotations omitted), it "must be tested, not by the pleadings alone, but by the affidavits and exhibits" supporting or opposing the motion to dismiss, *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (quotations omitted). *K-V Pharm. Co.*, 648 F.3d at 592. The Court "must view the evidence in the light most favorable to [LearSchmidt] and resolve all factual conflicts in its favor in deciding whether [LearSchmidt] made the requisite showing." *Id.*

It is uncontested that AB-Alpine is not a signatory to the APA forming the basis of LearSchmidt's claims, *see* Doc. 38-1, nor does AB-Alpine, a Florida limited liability company located in Boca Raton, Florida, maintain offices, own property, or operate facilities in Missouri,

---

[1] AB-Alpine initially filed a motion to dismiss for lack of personal jurisdiction, Doc. 7 (AB-Alpine's Motion to Dismiss Petition), pursuant to Missouri Rule of Civil Procedure 55.27(a)(2) in the Circuit Court for Cole County, Missouri before removing this action to federal court. After removal, LearSchmidt sought leave to amend its Petition, and the Court granted its unopposed motion, denying AB-Alpine's prior motion to dismiss as moot. Doc. 35 (Order on Motion to Amend). Thereafter, AB-Alpine filed a second motion to dismiss LearSchmidt's First Amended Complaint, incorporating all arguments made in its prior motion to dismiss and accompanying suggestions. Doc. 53 (AB-Alpine's Motion to Dismiss First Amended Complaint), p. 1, n.1 (incorporating Docs. 7, 10-1 (Affidavit of Richard Feldman), and 26 (Reply Suggestions in Support of AB-Alpine's Motion to Dismiss Petition)). LearSchmidt similarly incorporates its arguments previously raised in opposition to AB-Alpine's motion to dismiss. Doc. 55 (Suggestions in Opposition to Motion to Dismiss First Amended Complaint), p. 1 (incorporating Doc. 17 (Supplemental Suggestions in Opposition to Motion to Dismiss Petition)).

Doc. 10-1, ¶¶ 3–10. However, LearSchmidt asserts that personal jurisdiction is proper in this Court because AB-Alpine (1) is a mere "continuation of" or corporate "successor to [Alpine]" and (2) "engaged in business transactions" in Missouri, sufficient to satisfy the Missouri long-arm statute and due process. Doc. 55, pp. 3, 5; Doc. 38 at ¶ 12.

### A. Mere Continuation

Jurisdictional contacts of a corporate predecessor may be imputed to its successor without offending due process where the successor is "merely a continuation" of its predecessor. *Koch Supplies, Inc. v. Charles Needham Indust.*, 1990 WL 274485, *3 (W.D. Mo. 1990); *see also Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.*, 519 F.2d 634, 637 (8th Cir. 1975) (explaining that "if the corporation is [the defendant's] alter ego, its contacts are [the defendant's] and due process is satisfied"); *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002) ("[F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court."); *Massi v. Holden*, No. 09-cv-1821, 2011 WL 6181258, at *5 (D. Minn. Dec. 13, 2011) ("[P]ersonal jurisdiction over a corporate successor may be based on its predecessor's contacts with the forum, provided the successor would be liable for its predecessor's acts under the forum's law." (quotation omitted)). The theory is that because the predecessor and successor are the same entity, the jurisdictional contacts of one are the jurisdictional contacts of the other for purposes of the due process analysis. *Patin*, 294 F.3d at 653; *see also Green v. Montgomery Ward & Co.*, 775 S.W.2d 162, 166 (Mo. Ct. App. 1989) ("The rationale for this is quite simple. It would be all too

easy for a corporation to immunize itself from liability by utilizing such a device as a change of name.").

To determine whether a successor company is "merely a continuation" of its predecessor the Court considers whether there has been "a transfer or sale of all, or substantially all" of the predecessor's assets. *Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 804 (8th Cir. 2003) (quoting *Grand Labs v. Midcon Labs*, 32 F.3d 1277, 1281 n.5 (8th Cir. 1994)). Where such a transfer of assets has taken place, the Court then considers whether: (1) there is "common identity of officers, directors and stockholders"; (2) the incorporators of the successor also incorporated the predecessor; (3) the "business operations are identical"; (4) the transferee uses the same equipment, labor force, supervisors, and name of the transferor; and (5) notice has been given of the transfer to employees or customers. *Med. Shoppe Int'l, Inc.*, 336 F.3d at 804 (citing *Roper Elec. Co. v. Quality Castings, Inc.*, 60 S.W.3d 708, 711–13 (Mo. App. 2001)). Although no single factor is determinative, the first factor—common identity of officers, directors, and stockholders— is a "key" factor. *Helms v. Prime Tanning Corp.*, 2010 WL 1935952, *10 (W.D. Mo. May 11, 2010).

LearSchmidt argues that AB-Alpine "is a continuation of Alpine," Doc. 17, ¶ 36, because "some or all of the assets of Alpine were sold and purchased by . . . 'AB Alpine.'" Doc. 17-1 (Affidavit of Andrew Lear), ¶ 9. AB-Alpine acknowledges purchasing "many of the assets and liabilities of [Alpine]," but denies assuming any liabilities pursuant to the APA[2] and denies acting

---

[2] AB-Alpine asserts that its 2018 asset purchase agreement with Alpine evidences its "intent to limit its potential liability for such obligations" under the APA and that it "did not purchase Plaintiff's Assets when it executed the 2018 APA with [Alpine]." Doc. 54, p. 7. However, AB-Alpine's intent to limit its potential liability through a transfer of assets is irrelevant when AB-Alpine is alleged to be a "mere continuation" of, i.e., the same entity as, Alpine. Its assertion that it did not purchase LearSchmidt's assets, the revenues produced by a portfolio of merchant

4

as a mere continuation of Alpine. Doc. 54-1 (Affidavit of Darrell Dirks), ¶ 4; *see also* Doc. 50-1 (2018 APA). For purposes of this motion to dismiss, LearSchmidt has made a prima facia showing that there has been a substantial transfer of assets. Thus, the Court turns to its analysis of the five *Roper* factors. *See Med. Shoppe Int'l, Inc.*, 336 F.3d at 804 (finding a "substantial transfer of assets" sufficient to invoke mere continuation doctrine).

First, AB-Alpine acknowledges that when this lawsuit was initiated, until sometime after its removal to federal court, defendant Brian McDevitt was a part owner of AB-Alpine. Doc. 1 (Notice of Removal), p. 3 (identifying Brian J. McDevitt as one of three members of AB-Alpine). Mr. McDevitt was also a part owner of Alpine and one of two members of Alpine to execute the APA on its behalf. Doc. 38-1, p. 11 (identifying Mr. McDevitt as a member of Alpine). AB-Alpine asserts that Mr. McDevitt is no longer a member of AB-Alpine. Doc. 54-1, ¶ 21. However, this does not negate the fact that at the time of the asset transfer and alleged breach, as well as for the first few months of this lawsuit, Alpine and AB-Alpine shared common identity amongst their members. Thus, the first factor weighs in favor of finding that AB-Alpine is a mere continuation of Alpine.

Next, AB-Alpine asserts that "[Alpine] and AB-Alpine SPE were formed by different individuals and/or entities." Doc. 54, p. 6 ("[Robert] Ensminger and [Mr.] McDevitt formed [Alpine]; they did not form AB-Alpine."). However, it is unclear from AB-Alpine's briefing whether neither Mr. Ensminger nor Mr. McDevitt formed AB-Alpine or simply that this combination of individuals alone did not form AB-Alpine. Thus, the Court is unable to determine whether the second factor weighs in favor or against a finding of a mere continuation.

---

accounts described in section 1.1 of the APA, is also beside the point. Alpine was not in a position to sell assets owned by LearSchmidt.

Third, AB-Alpine asserts, without further explanation, that its "business operations are distinguishable from [Alpine]'s." *Id.* at pp. 6–7. However, based on the allegations in the First Amended Complaint, AB-Alpine continued the exact same business operations, at least with respect to its assistance with maintenance of the Accounts and interactions with LearSchmidt. *See generally*, Doc. 38. Absent further explanation from AB-Alpine of the distinguishing aspects of its business, the third factor weights in favor of finding that AB-Alpine is a mere continuation of Alpine.

Fourth, AB-Alpine asserts that it "does not use [Alpine]'s name, labor force, or supervisors." *Id.* at 7. However, this self-serving statement contradicts the allegations raised in LearSchmidt's First Amended Complaint and basic common sense. Aside from the obvious similarity between the name Alpine and AB-Alpine, LearSchmidt alleges that it interfaced with Darrell Dirks and Mr. McDevitt by telephone and e-mail, as representatives of Alpine and later AB-Alpine, before and after the transfer of assets from Alpine to AB-Alpine. *See generally*, Doc. 38, ¶¶ 27–44, 53; *see also* Doc. 17-1, ¶¶ 6, 11–15. LearSchmidt asserts that in acquiring assets from Alpine, it "had conversations with Darrell Dirks and Brian McDevitt on behalf of Alpine." Doc. 17-1, ¶ 6. After the transfer of assets from Alpine to AB-Alpine, LearSchmidt continued to communicate with Mr. McDevitt, now on behalf of AB-Alpine. *Id.* at ¶ 15. Mr. Dirks also appears to now be associated with AB-Alpine, as evidenced by his affidavit on AB-Alpine's behalf. *See* Doc. 53-1, ¶ 2 (identifying himself as Senior Vice President of AB-Alpine). Moreover, LearSchmidt alleges that employees of AB-Alpine, Mr. McDevitt specifically, continued to use the same "@iqatm.com" email addresses, previously affiliated with Alpine, after the transfer of assets to AB-Alpine. Doc. 55, p. 7; Doc. 17-1, ¶ 15. Thus, the fourth factor weighs in favor of finding that AB-Alpine is a mere continuation of Alpine.

Lastly, AB-Alpine asserts that it "notified [Alpine]'s former employees [and customers] of the asset purchase." Doc. 54, p. 7; Doc. 50 (AB-Alpine's Suggestions in Opposition to Motion for Temporary Restraining Order and Preliminary Injunction), p. 6 ("[A]ny former [Alpine] customer who contacted AB-Alpine SPE was advised of the asset purchase and that [Alpine] was no longer in business."). This factor would weigh against a finding of a mere continuation, but for the notice which was given. *See Medicine Shoppe Intern, Inc.*, 336 F.3d 805 (concluding notice that "Only the name has changed" weighed in favor of finding a mere continuation). AB-Alpine allegedly contacted customers to tell them that "AB[-Alpine] had changed its name, from Alpine," Doc. 38, ¶¶ 44, 64; *see also* Doc. 17, ¶ 24; Doc. 17-1, ¶ 19 ("Upon information obtained by the Plaintiff, the Defendant was informing merchants that Alpine had changed its name to AB Alpine, and needed the merchants to sign new contracts and agreements with the Defendant."), and that Alpine "was no longer in business." Doc. 50, p. 6. Moreover, LearSchmidt alleges that neither Alpine nor AB-Alpine informed LearSchmidt of the 2018 asset purchase. Doc. 55, p. 7. AB-Alpine does not deny these allegations.

At this stage, the majority of the *Roper* factors weigh in favor of finding that AB-Alpine is a mere continuation of Alpine. As a "mere continuation" of Alpine, AB-Alpine is subject to the personal jurisdiction of the Missouri courts if Alpine had contacts with the state sufficient to allow this exercise of personal jurisdiction. *See Green*, 775 S.W.2d at 166. Thus, the question becomes whether the contacts Alpine had with Missouri are sufficient to establish jurisdiction over its alleged successor, AB-Alpine. *See id.*

### B. Minimum Contacts

For the Court to exercise personal jurisdiction over AB-Alpine, jurisdiction must be appropriate under both the Missouri long-arm statute and the Due Process Clause of the Fourteenth

7

Amendment. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co.*, 646 F.3d 589, 593 (8th Cir. 2011). In relevant part, Missouri's long-arm statute authorizes personal jurisdiction over defendants who transact business, make a contract, or commit a tort within the state, as to any cause of action arising from the doing of such acts. Mo. Rev. Stat. § 506.500.1. These categories are construed broadly, such that if a defendant commits one of the acts specified in the long-arm statute, the statute will be interpreted "to provide for jurisdiction . . . to the full extent permitted by the [D]ue [P]rocess [C]lause." *Viasystems, Inc.*, 646 F.3d at 593 (quotations omitted).

To satisfy due process a defendant must have "sufficient minimum contacts" with the forum state so as not to "offend traditional notions of fair play and substantial justice." *Romak USA, Inc. v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004) (quotations omitted). Due process is satisfied if the out-of-state defendant "purposefully directed [its] activities at [Missouri] residents in a suit that arises out of or relates to these activities." *Johnson*, 614 F.3d at 794 (quotations omitted). The Court considers: (1) the "nature and quality" of the defendant's contacts with Missouri; (2) the "quantity of such contacts"; (3) the "relation of the cause of action to the contacts"; (4) the interest of Missouri in providing a forum; and (5) the "convenience of the parties[,]" giving "significant weight . . . to the first three factors." *Romak USA, Inc.*, 384 F.3d at 984 (quotations omitted).

Here, LearSchmidt alleges that Alpine, later AB-Alpine, engaged in business transactions, negotiated the terms of the APA and various other agreements, transferred payments, and sent numerous communications via e-mail and telephone directed at LearSchmidt in Missouri, from 2017 through 2019. While communications with the forum state via telephone or e-mail alone are insufficient to satisfy due process, *see Scullin Steel v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309, 314 (8th Cir. 1982), more than just these conversations occurred. Alpine purposefully availed

8

itself of the privilege of conducting activities within Missouri when it negotiated and entered into a contract with LearSchmidt in Missouri,[3] agreed and delivered payments due to LearSchmidt under the APA in Missouri, and attempted to solicit accounts from LearSchmidt, knowing that LearSchmidt was a Missouri company. *See Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 520 (8th Cir. 2010) (finding personal jurisdiction proper where defendant lacked physical presence but had substantial and complex business dealings with plaintiff residing in forum state, distinguishing *Scullin*, in part, based on defendant's solicitation of plaintiff's business, with the knowledge that plaintiff was incorporated in the forum state).

Although it is unclear from the existing record how many communications Alpine and/or AB-Alpine made to LearSchmidt in Missouri, there is a direct relationship between the contacts and the cause of action here. Furthermore, the Eighth Circuit has held that a defendant's tortious acts can give rise to personal jurisdiction if the plaintiff makes a prima facie showing that the defendant's intentional acts were "uniquely or expressly aimed at the forum state" and caused harm in the forum state and the defendant knew that the harm was likely to be suffered in the forum state. *Johnson*, 614 F.3d at 796 (citing *Calder v. Jones*, 465 U.S. 783 (1984)). LearSchmidt's allegations support the conclusion that Alpine, later AB-Alpine, intentionally interfered with LearSchmidt's business expectancies with the knowledge that the damage from the interference would be suffered in Missouri. *See Oriental Trading Co. v. Firetti*, 236 F.3d 938, 941–43 (8th Cir. 2001) (concluding a "lack of physical presence in a state cannot alone defeat jurisdiction" and

---

[3] A contract is created where accepted. *Dillard v. Shaughnessy, Fickel & Scott Architects, Inc.*, 943 S.W.2d 711, 716 (Mo. Ct. App. 1997) ("[T]he place of contracting is the place where the last act necessary to form the contract occurs."). Here, LearSchmidt, the buyer, accepted Alpine's offer of sale in Missouri. Doc. 38-1, p. 1.

finding jurisdiction based on telephone calls and faxes did not violate due process where defendant knew its intentional acts were likely to result in harm suffered in the forum state).

Moreover, the choice-of-law provision in the APA further supports a finding of personal jurisdiction over AB-Alpine. The provision states that "[a]ll questions relating to the interpretation, construction and enforcement of this Agreement will be determined in accordance with the laws of the State of Missouri." Doc. 38-1, p. 8, § 16.2. This provides "further evidence of [Alpine's] 'deliberate affiliation with the forum state and the reasonable foreseeability of possible litigation there.'" *K–V Pharm. Co*, 648 F.3d at 594 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985)). Missouri has a clear interest in providing a forum for LearSchmidt, a business operating in the state. Finally, AB-Alpine has not alleged that it is inconvenient for this matter to proceed in Missouri and, in fact, has hired Missouri based counsel.

Given that at this stage the facts must be construed in LearSchmidt's favor, the Court concludes LearSchmidt has presented a prima facie case that AB-Alpine is subject to personal jurisdiction in this Court.

### III. Conclusion

For these reasons, AB-Alpine's motion to dismiss, Doc. 53, is denied.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: May 28, 2019
Jefferson City, Missouri