# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| LEARSCHMIDT INVESTMENT GROUP, LLC,<br><br>Plaintiff,<br><br>v.<br><br>AB-ALPINE SPE, LLC., *et al.*,<br><br>Defendants. | Case No. 2:19-cv-04053-NKL |

## ORDER

On June 19, 2019, defendant AB-Alpine SPE, LLC ("AB-Alpine") and plaintiff LearSchmidt Investment Group, LLC ("LearSchmidt") appeared before the Court for an evidentiary hearing on the issue of personal jurisdiction. After considering the exhibits, testimony, and arguments of counsel, the Court finds that personal jurisdiction over AB-Alpine is proper.

**I.      Background**

In January 2017, LearSchmidt entered into an Asset Purchase Agreement ("APA") with IQ Payment Systems, LLC d/b/a Alpine Payment Systems ("Alpine"), in which LearSchmidt purchased the revenues produced by a portfolio of merchant accounts, described more fully in Section 1.1 of the APA (the "Accounts"). *See* Doc. 38-1 (2017 APA). Under the terms of the 2017 APA, LearSchmidt purchased Alpine's right, title, and interest to all revenue produced for the portfolios identified in the 2017 APA for $1,740,000. Pursuant to the agreement, Alpine guaranteed $60,000 in monthly revenue for eighteen months, and LearSchmidt was to receive notice and right of first refusal to purchase the rights or interests in the Accounts from Alpine, should Alpine elect to sell or dispose of any of its rights.

LearSchmidt alleges that in or around May 2018 Alpine "sold its rights and interests in the Accounts to [AB-Alpine]," without notice pursuant to its right of first refusal. Doc. 38 (First-Amended Complaint), ¶ 26. LearSchmidt asserts that "the obligations and covenants of Alpine under the [2017 APA] are binding upon [AB-Alpine] as the successor and assign of Alpine." *Id.* at ¶ 62.

AB-Alpine previously moved to dismiss LearSchmidt's claims for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2).[1] The Court denied the motion finding that LearSchmidt had made a *prima facie* showing of personal jurisdiction, Doc. 73, and scheduled the matter for an evidentiary hearing, Doc. 72.

## II.     Discussion

LearSchmidt carries the burden of proof and must demonstrate personal jurisdiction by a preponderance of the evidence. *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991); *Cantrell v. Extradition Corp. of America*, 789 F. Supp. 306, 303 (W.D. Mo. 1992) ("[I]f the Court holds an evidentiary hearing—in a manner similar to determining the issue at trial—the plaintiff must demonstrate personal jurisdiction by a preponderance of the evidence." (quotations omitted)).

---

[1] AB-Alpine initially filed a motion to dismiss for lack of personal jurisdiction, Doc. 7 (AB-Alpine's Motion to Dismiss Petition), pursuant to Missouri Rule of Civil Procedure 55.27(a)(2) in the Circuit Court for Cole County, Missouri before removing this action to federal court. After removal, LearSchmidt sought leave to amend its Petition, and the Court granted its unopposed motion, denying AB-Alpine's prior motion to dismiss as moot. Doc. 35 (Order on Motion to Amend). Thereafter, AB-Alpine filed a second motion to dismiss LearSchmidt's First-Amended Complaint, incorporating all arguments made in its prior motion to dismiss and accompanying suggestions. Doc. 53 (AB-Alpine's Motion to Dismiss First-Amended Complaint), p. 1, n.1 (incorporating Docs. 7, 10-1 (Affidavit of Richard Feldman), and 26 (Reply Suggestions in Support of AB-Alpine's Motion to Dismiss Petition)). LearSchmidt similarly incorporated its arguments previously raised in opposition to AB-Alpine's motion to dismiss. Doc. 55 (Suggestions in Opposition to Motion to Dismiss First-Amended Complaint), p. 1 (incorporating Doc. 17 (Supplemental Suggestions in Opposition to Motion to Dismiss Petition)).

It is uncontested that AB-Alpine is not a signatory to the 2017 APA forming the basis of LearSchmidt's claims, *see* Doc. 38-1, nor does AB-Alpine, a Florida limited liability company located in Boca Raton, Florida, maintain offices, own property, or operate facilities in Missouri, Doc. 10-1, ¶¶ 3–10.  However, LearSchmidt asserts that personal jurisdiction is proper because AB-Alpine (1) is a mere "continuation of" or corporate "successor to [Alpine]" and (2) "engaged in business transactions" in Missouri, sufficient to satisfy the Missouri long-arm statute and due process.  Doc. 55, pp. 3, 5; Doc. 38 at ¶ 12.  After consideration of the testimony and evidence presented by the parties, the Court finds that LearSchmidt has met its burden of establishing personal jurisdiction by a preponderance of the evidence.

### A.  Mere Continuation

Jurisdictional contacts of a corporate predecessor may be imputed to its successor without offending due process where the successor is "merely a continuation" of its predecessor.  *Koch Supplies, Inc. v. Charles Needham Indust.*, 1990 WL 274485, *3 (W.D. Mo. 1990); *see also Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.*, 519 F.2d 634, 637 (8th Cir. 1975) (explaining that "if the corporation is [the defendant's] alter ego, its contacts are [the defendant's] and due process is satisfied"); *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002) ("[F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court."); *Massi v. Holden*, No. 09-cv-1821, 2011 WL 6181258, at *5 (D. Minn. Dec. 13, 2011) ("[P]ersonal jurisdiction over a corporate successor may be based on its predecessor's contacts with the forum, provided the successor would be liable for its predecessor's acts under the forum's

law." (quotation omitted)). The theory is that because the predecessor and successor are the same entity, the jurisdictional contacts of one are the jurisdictional contacts of the other for purposes of the due process analysis. *Patin*, 294 F.3d at 653; *see also Green v. Montgomery Ward & Co.*, 775 S.W.2d 162, 166 (Mo. Ct. App. 1989) ("The rationale for this is quite simple. It would be all too easy for a corporation to immunize itself from liability by utilizing such a device as a change of name.").

To determine whether a successor company is "merely a continuation" of its predecessor the Court considers whether there has been "a transfer or sale of all, or substantially all" of the predecessor's assets. *Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 804 (8th Cir. 2003) (quoting *Grand Labs v. Midcon Labs*, 32 F.3d 1277, 1281 n.5 (8th Cir. 1994)). Where such a transfer of assets has taken place, the Court considers whether: (1) there is "common identity of officers, directors and stockholders"; (2) incorporators of the successor also incorporated the predecessor; (3) "business operations are identical"; (4) the transferee uses the same equipment, labor force, supervisors, and name of the transferor; and (5) notice has been given of the transfer to employees or customers. *Med. Shoppe Int'l, Inc.*, 336 F.3d at 804 (citing *Roper Elec. Co. v. Quality Castings, Inc.*, 60 S.W.3d 708, 711–13 (Mo. App. 2001)). Although no single factor is determinative, the first factor—common identity of officers, directors, and stockholders—is a "key" factor. *Helms v. Prime Tanning Corp.*, 2010 WL 1935952, *10 (W.D. Mo. May 11, 2010).

LearSchmidt argues that AB-Alpine "is a continuation of Alpine," Doc. 17, ¶ 36, because "some or all of the assets of Alpine were sold and purchased by . . . 'AB Alpine.'" Doc. 17-1 (Affidavit of Andrew Lear), ¶ 9. AB-Alpine, via affidavit and through the testimony of its Chief Corporate Development Officer, Richard Feldman, acknowledges purchasing "many of the assets

4

and liabilities of [Alpine]," but denies assuming any liabilities pursuant to the 2017 APA.[2] Doc. 54-1 (Affidavit of Darrell Dirks), ¶ 4; *see also* Doc. 50-1 (2018 APA). Schedule B to the 2018 APA between Alpine and AB-Alpine summarizes the assets purchased by AB-Alpine to include "residual payments" owed to Alpine under various portfolios; "[a]ny and all other agreements and rights to compensation" due to Alpine; "[a]ll tangible/Intangible Assets listed in the Bill of Sale, such as computers, office furniture, other office equipment, trade names, patents, company websites, social media accounts etc."; "[c]ustomer lists, records, and files"; "[a]ll rights to the current phone numbers used in [Alpine's] Business"; all merchant agreements; "[a]ll merchant books and records"; and "[a]ll rights to reserves and deposits." Doc. 50-1, p. 24 (Purchased Assets). Thus, despite AB-Alpine's intent to limit its liabilities under the 2017 APA, LearSchmidt has established that there was a substantial transfer of assets from Alpine to AB-Alpine, and Court turns to its analysis of the five *Roper* factors. *See Med. Shoppe Int'l, Inc.*, 336 F.3d at 804 (finding a "substantial transfer of assets" sufficient to invoke mere continuation doctrine).

First, AB-Alpine acknowledges that when this lawsuit was initiated, until sometime after its removal to federal court, Brian McDevitt was a part owner of AB-Alpine. Doc. 1 (Notice of Removal), p. 3 (identifying Brian J. McDevitt as one of three members of AB-Alpine). Mr. McDevitt was also a part owner of Alpine and one of two members of Alpine to execute the 2017 APA on its behalf. Doc. 38-1, p. 11. AB-Alpine asserts that Mr. McDevitt is no longer a member of AB-Alpine. Doc. 54-1, ¶ 21. However, this does not negate the fact that at the time of the asset

---

[2] AB-Alpine asserts that its 2018 APA with Alpine evidences its "intent to limit its potential liability for such obligations" under the 2017 APA and that it "did not purchase Plaintiff's Assets when it executed the 2018 APA with [Alpine]." Doc. 54, p. 7. However, AB-Alpine's intent to limit its potential liability through a transfer of assets is irrelevant when AB-Alpine is alleged to be a "mere continuation" of, *i.e.*, the same entity as, Alpine. *See Green*, 775 S.W.2d at 165 (noting that liabilities of a transferor are assumed by its successor "where the transaction was entered into to escape liability for such debts on a fraudulent basis").

5

transfer and alleged breach, as well as for the first few months of this lawsuit, Alpine and AB-Alpine shared common identity amongst their members. Thus, the first factor weighs in favor of finding that AB-Alpine is a continuation of Alpine.

Next, AB-Alpine asserts that "[Alpine] and AB-Alpine SPE were formed by different individuals and/or entities"; "[Robert] Ensminger and [Mr.] McDevitt formed [Alpine]; they did not form AB-Alpine." Doc. 54, p. 6. However, at the evidentiary hearing, Mr. Feldman testified that AB-Alpine was incorporated by American Bancard, LLC, Mr. McDevitt, and Mr. Dirks. In other words, it is undisputed that Mr. McDevitt was an incorporator of both Alpine and AB-Alpine. Given this overlap in incorporators, the second factor also weighs in favor of finding that AB-Alpine is a mere continuation of Alpine.

Third, AB-Alpine asserts that its "business operations are distinguishable from [Alpine]'s." Doc. 54 (Suggestions in Support of AB-Alpine's Motion to Dismiss First-Amended Complaint), pp. 6–7. At the evidentiary hearing, Mr. Feldman explained that Alpine was a "retail ISO," meaning it generated accounts and facilitated the service of those accounts, while AB-Alpine is a "wholesale ISO," that in addition to the business operations of a retail ISO, also assesses and assumes the risk for its customer/merchant transactions. In essence, Mr. Feldman's testimony confirmed LearSchmidt's allegations in the First-Amended Complaint that AB-Alpine continued the exact same business operations, at least with respect to its assistance with maintenance of the Accounts and interactions with LearSchmidt. *See generally*, Doc. 38. Based on the evidence presented at the hearing, AB-Alpine, as a wholesale ISO, has assumed all of the prior business operations of Alpine but now offers some additional services. On this record, the third factor weighs in favor of finding that AB-Alpine is a continuation of Alpine.

Fourth, AB-Alpine asserts that it "does not use [Alpine]'s name, labor force, or supervisors." Doc. 54 at 7. However, this self-serving statement directly contradicts the 2018 APA and the testimony of Mr. Feldman that AB-Alpine purchased the "trade name" of IQ Payment Systems d/b/a Alpine Payment Systems. Doc. 50-1, p. 24. AB-Alpine purchased the Alpine Payments Systems tradename and continued to operate its business under that name. *See* Plaintiff's Exhibit 9 (emails referring to defendant AB-Alpine as "Alpine Payment Systems," "New AB Alpine," and "Alpine Payments"); Plaintiff's Exhibit 7. After the transfer of assets from Alpine to AB-Alpine, LearSchmidt continued to communicate with Mr. McDevitt and Mr. Dirks, now on behalf of AB-Alpine. Doc. 17-1, ¶¶ 6, 15 (asserting via affidavit that LearSchmidt "had conversations with Darrell Dirks and Brian McDevitt on behalf of Alpine" and AB-Alpine). Moreover, employees of AB-Alpine, continued to use the same "@iqatm.com" email addresses, previously affiliated with Alpine, after the transfer of assets. *Id.* at ¶ 15.

While Mr. McDevitt has since severed ties with AB-Alpine and Mr. Feldman has assumed a supervisory role, Mr. Dirks continues to hold a supervisory role with AB-Alpine, reflecting continuity in leadership between Alpine and AB-Alpine. *See* Doc. 54-1, ¶ 2 (identifying Mr. Dirks as Senior Vice President of AB-Alpine). Although other former Alpine employees were required to complete job applications and background checks before being hired by AB-Alpine, Alpine employees were given the opportunity to interview for positions and many were retained. In addition, AB-Alpine does not deny the transfer and use of Alpine's equipment and other intangible assets. Doc. 50-1, p. 24 (identifying Alpine's "computers, office furniture, other office equipment, trade names, patents, company websites, social media accounts . . . customer lists, records, and files" among the assets purchased by AB-Alpine). Thus, the fourth factor weighs in favor of finding that AB-Alpine is a mere continuation of Alpine.

Lastly, AB-Alpine asserts that it "notified [Alpine]'s former employees [and customers] of the asset purchase." Doc. 54, p. 7; Doc. 50 (AB-Alpine's Suggestions in Opposition to Motion for Temporary Restraining Order and Preliminary Injunction), p. 6 ("[A]ny former [Alpine] customer who contacted AB-Alpine SPE was advised of the asset purchase and that [Alpine] was no longer in business."). According to Mr. Feldman's testimony, LearSchmidt was also aware of the transaction between Alpine and AB-Alpine as evidenced by subsequent negotiations between LearSchmidt and AB-Alpine for servicing of the Accounts. However, Neal Tichelkamp, an employee of LearSchmidt, testified that he received no such notice from AB-Alpine of the transfer and instead learned of the transaction through the "Green Sheet." Mr. Tichelkamp testified that negotiations regarding servicing ensued because the Accounts, which were previously serviced by Alpine, were no longer being serviced, despite the fact that AB-Alpine assumed and was operating the customer service line of Alpine. LearSchmidt's alleged lack of knowledge of the transfer, is supported by the fact Mr. McDevitt and others at AB-Alpine continued to discuss business operations and customer account issues with LearSchmidt long after the May 2018 transfer of assets from Alpine to AB-Alpine. *See* Plaintiff's Exhibits 7 and 9.

Having considered the evidence submitted by the parties, the Court finds that the majority of the *Roper* factors weigh in favor of finding that AB-Alpine is a mere continuation of Alpine.

### B. Minimum Contacts

As a "mere continuation" of Alpine, AB-Alpine is subject to the personal jurisdiction of the Missouri courts if Alpine had contacts with the state sufficient to allow this exercise of personal jurisdiction. *See Green*, 775 S.W.2d at 166. Thus, the question is whether the contacts Alpine had with Missouri are sufficient to establish jurisdiction over its successor, AB-Alpine. *See id.*

For the Court to exercise personal jurisdiction over AB-Alpine, jurisdiction must be appropriate under both the Missouri long-arm statute and the Due Process Clause of the Fourteenth Amendment. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co.*, 646 F.3d 589, 593 (8th Cir. 2011). In relevant part, Missouri's long-arm statute authorizes personal jurisdiction over defendants who transact business, make a contract, or commit a tort within the state, as to any cause of action arising from the doing of such acts. Mo. Rev. Stat. § 506.500.1. These categories are construed broadly, such that if a defendant commits one of the acts specified in the long-arm statute, the statute will be interpreted "to provide for jurisdiction . . . to the full extent permitted by the [D]ue [P]rocess [C]lause." *Viasystems, Inc.*, 646 F.3d at 593 (quotations omitted).

To satisfy due process a defendant must have "sufficient minimum contacts" with the forum state so as not to "offend traditional notions of fair play and substantial justice." *Romak USA, Inc. v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004) (quotations omitted). Due process is satisfied if the out-of-state defendant "purposefully directed [its] activities at [Missouri] residents in a suit that arises out of or relates to these activities." *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (quotations omitted). The Court considers: (1) the "nature and quality" of the defendant's contacts with Missouri; (2) the "quantity of such contacts"; (3) the "relation of the cause of action to the contacts"; (4) the interest of Missouri in providing a forum; and (5) the "convenience of the parties[,]" giving "significant weight . . . to the first three factors." *Romak*, 384 F.3d at 984.

Here, LearSchmidt alleges that Alpine, later AB-Alpine, engaged in business transactions, negotiated the terms of the 2017 APA and various other agreements, transferred payments, and sent numerous communications via e-mail and telephone directed at LearSchmidt in Missouri, from 2017 through 2019. While communications with the forum state via telephone or e-mail alone are insufficient to satisfy due process, *see Scullin Steel v. Nat'l Ry. Utilization Corp.*, 676

F.2d 309, 314 (8th Cir. 1982), more than just these conversations occurred. Alpine purposefully availed itself of the privilege of conducting activities within Missouri when it negotiated and entered into a contract with LearSchmidt in Missouri,[3] agreed to deliver payments due to LearSchmidt under the 2017 APA in Missouri, and attempted to solicit accounts from LearSchmidt, knowing that LearSchmidt was a Missouri company.

Although it is unclear from the existing record how many contacts Alpine and/or AB-Alpine made with LearSchmidt in Missouri, there is a direct relationship between the contacts and the cause of action here. Alpine, now AB-Alpine, "enter[ed] a contractual relationship that 'envisioned continuing and wide-reaching contacts'" in Missouri, in the form of monthly payments of revenue for a period of at least eighteen months and ongoing account servicing. *Walden v. Fiore*, 571 U.S. 277, 290 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479–80 (1985)); *see Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 520 (8th Cir. 2010) (finding personal jurisdiction proper where defendant lacked physical presence but had substantial and complex business dealings with plaintiff residing in forum state, distinguishing *Scullin*, in part, based on defendant's solicitation of plaintiff's business, with the knowledge that plaintiff was incorporated in the forum state). *Contra Federated Mut. Ins. Co. v. FedNat Holding Co.*, 928 F.3d 718, 721 (8th Cir. 2019) (finding minimum contacts lacking where contract did not contemplate "regular communications" between the parties in the forum state).

Moreover, the choice-of-law provision in the 2017 APA provides "further evidence of [Alpine's] 'deliberate affiliation with the forum state and the reasonable foreseeability of possible

---

[3] A contract is created where accepted. *Dillard v. Shaughnessy, Fickel & Scott Architects, Inc.*, 943 S.W.2d 711, 716 (Mo. Ct. App. 1997) ("[T]he place of contracting is the place where the last act necessary to form the contract occurs."). Here, LearSchmidt, the buyer, accepted Alpine's offer of sale in Missouri. Doc. 38-1, p. 1.

litigation there.'" *K–V Pharm. Co*, 648 F.3d at 594 (quoting *Burger King*, 471 U.S. at 482); Doc. 38-1, p. 8, § 16.2 (stating "[a]ll questions relating to the interpretation, construction and enforcement of [the 2017 APA] will be determined in accordance with the laws of the State of Missouri"). In addition, Missouri has a clear interest in providing a forum for LearSchmidt, a business operating in the state. *See Aly v. Hanzada for Import & Export Co., Ltd.*, No. 12-6069-SJ–DGK, 2014 WL 2829513 at *9 (W.D. Mo. June 23, 2019) ("Missouri favors protecting contractual expectations arising within its borders, which gives interest in providing a forum.").

Finally, AB-Alpine has not alleged that it is inconvenient for this matter to proceed in Missouri. Mr. McDevitt is a resident of the state of Washington, while AB-Alpine is located in Florida, and LearSchmidt is located in Missouri. Depositions will necessarily need to take place in Washington, Florida, and Missouri, with all parties facing travel costs and expenses, regardless of where the case is heard.

Considering each of these factors, the Court finds that the due process requirements of sufficient minimum contacts have been met.

## III. Conclusion

For these reasons, the Court concludes that LearSchmidt has established, by a preponderance of the evidence, that personal jurisdiction over defendant AB-Alpine is proper. Defendant AB-Alpine shall file its Answer to the First-Amended Complaint within fourteen days of the date of this Order.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: August 12, 2019  
Jefferson City, Missouri